**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**


NANCY D. CORDELL                                                                    PLAINTIFF


V.                                          NO. 1:08CV00016 JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                             DEFENDANT


**MEMORANDUM AND ORDER**

**I.  Introduction**

Plaintiff, Nancy D. Cordell, has appealed the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits

("DIB").  Both parties have filed Appeal Briefs (docket entries #12 and #14), and the issues are now

joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is

supported by substantial evidence on the record as a whole and whether it is based on legal error.

*Long v. Chater,* 108, F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  While "substantial

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1]

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

analysis:

"[O]ur review is more than an examination of the record for the existence of

_____

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

> substantial evidence in support of the Commissioner's decision; we also take into
> account whatever in the record fairly detracts from that decision." *Haley v.*
> *Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however,
> "merely because substantial evidence would have supported an opposite decision."
> *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On June 6, 2005, Plaintiff filed an application for DIB, alleging disability since December 1, 2002, due to osteoarthritis, a problem with her liver enzymes, chronic obstructive pulmonary disease ("COPD"), and a history of mental illness. (Tr. 40-44, 68-69.) After Plaintiff's claim was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On June 22, 2006, the ALJ conducted an administrative hearing, where Plaintiff was the only witness. (Tr. 303-18.) At the time of the hearing, Plaintiff was 56-years old and had obtained a GED. (Tr. 306.) Plaintiff's past relevant work included jobs as a factory packaging supervisor and a data-entry clerk. (Tr.69.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.* at § 404.1520(b).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(a)(4)(ii). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the

-2-

severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(4)(iii).[2]  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.*, § 404.1520(a)(4)(iv).  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  *Id.*, § 404.1520(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded.  *Id.*

In his September 21, 2006 decision, the ALJ found that Plaintiff: (1) met the Act's insured status requirements; (2) had not engaged in substantial gainful activity since the alleged onset date; (3) had "severe" impairments consisting of degenerative disc disease and osteoarthritis, but did not have any combination of impairments meeting a Listing; (4) was not fully credible; (5) had the RFC to perform light work that did not require lifting or carrying more than 25 pounds or walking/standing more than 4 hours per day; and (6) had past relevant work as a data-entry clerk which did not require the performance of work-related activities precluded by her RFC.  (Tr. 19.) Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 19.)

On February 1, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 5-7.)  Plaintiff then filed her Complaint appealing that decision to this Court.  (Docket entry #2.)

---

[2]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence.  *Id.*, § 404.1520(a)(4).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

## II.  Analysis

In Plaintiff's Appeal Brief (docket entry #12), she argues that the ALJ erred: (1) in discounting her credibility; (2) in failing to analyze the demands of her past relevant work; (3) in his Listing analysis; and (4) in failing to explain the basis for his RFC assessment. Before addressing the merits of these arguments, the Court will briefly review the relevant evidence.

### A.     Hearing Testimony and Medical Evidence

Plaintiff testified that, in 2000, she suffered an injury while installing telephone hardware and cable for a telecommunications business. (Tr. 308.) Plaintiff fell down some steps and fractured her hip. (Tr. 309.)  Following the injury, her employer accommodated her by moving her to a lighter job doing data entry in an office. (Tr. 309.) Plaintiff eventually quit this job because she "couldn't go up and down the steps anymore," had trouble typing, and could not sit for very long  (Tr. 309, 314.)

Plaintiff was seeing her family physician for arthritis, anxiety, and depression.  (Tr. 310.) Plaintiff took muscle relaxers and medication for pain in her neck and shoulders.  She also took medication for swelling in her feet and hands.  (Tr. 311.)  Osteoarthritis gave Plaintiff problems in her hands, hips, feet, shoulders, and neck.  (Tr. 311.)  Plaintiff described her arthritis as a constant problem.  (Tr. 312.)  She also had COPD.  (Tr. 313.)

Plaintiff testified that she could stand for 15 to 30 minutes before hip and foot pain caused her to need to sit. (Tr. 313.)  She could sit for 30 to 45 minutes before she developed problems from hip, back, and neck pain.  (Tr. 313.)  Plaintiff qualified her testimony concerning lifting, testifying that she could lift 25 pounds "without too much difficulty," 20 pounds "not easily," and had to use 2 hands to lift a gallon of milk.  (Tr. 313-14.)  During the day, Plaintiff wore a brace on her hands

to "support" them and reduce the pain in her hands.  (Tr. 314-15.)  Plaintiff testified that she could

not manipulate everyday objects and had reduced grip strength.  (Tr. 316.)

After slipping and falling down some stairs, Plaintiff saw her family physician, Dr. Julea

Garner, on January 24, 2001.  (Tr. 273.)  X-rays of the lumbar spine showed some degenerative

changes, with no acute fracture or dislocation, and very minor degenerative changes in the hips, with

no acute fracture or dislocation.  (Tr. 261.)  On a return visit on January 31, 2001, Plaintiff indicated

that she was feeling much better and wanted to go back to work where she "sits at a computer most

of the day."  (Tr. 278.)  Dr. Garner released Plaintiff to return to "light duty" work where she could

not lift anything heavier than 20 pounds and needed to periodically get up and walk around.  (Tr.

280.)  Later, on February 20, 2001, Dr. Garner released Plaintiff to return to work with no

restrictions.  (Tr. 282-83.)

On February 14, 2002, Plaintiff underwent a nerve conduction study of her right upper

extremity based on complaints of pain in her right thumb, and numbness and tingling in her ring and

pinky fingers.  (Tr. 104.)  Neurologist Ron Smith concluded that the study was normal and did not

reveal entrapment of the median or ulnar nerves.  (Tr. 105.)  On March 1, 2002, Plaintiff underwent

a bone density scan of the hip and lumbar spine which was relatively normal except for the femoral

aspect of the left hip, where there was a moderately increased risk of fracture.  (Tr. 156.)

On April 22, 2005, Plaintiff underwent an x-ray of her cervical and thoracic spine based on

complaints of neck and back pain.  (Tr. 189.)  The cervical x-ray showed degenerative changes with

no fracture or subluxation deformity, and the thoracic x-ray showed mild degenerative changes with

no fracture or subluxation deformity.

On July 27, 2005, Plaintiff underwent a series of x-rays based on complaints of osteoarthritis.

A right-hand x-ray showed degenerative arthritis in the tips of her index, middle, ring, and small fingers at the distal interphalangeal joints. (Tr. 186.) An x-ray of her left hip joint was normal. (Tr. 187.) An x-ray of her left knee showed minimal narrowing of the medial compartment as well as two calcific densities of the medial compartment. (Tr. 188.)

On July 27, 2005, Plaintiff underwent a consultative physical examination from Dr. Webster. (Tr. 190-96.) The examination was essentially normal. Plaintiff's range of motion in her extremities and spine was normal but for her lumbar spine (which had an 85 degree range of motion along a normal range of 0 to 90 degrees). (Tr. 193.) Her neurological examination was normal. (Tr. 194.) Finally, Plaintiff could hold a pen and write, touch her fingertips, had 100% grip strength, oppose her thumb to finger, and pick up a coin. (Tr. 194.) The only limitation in Plaintiff's range of motion involved her being able to squat "60% [of the] way down," which Dr. Webster described as a "mild limitation of squatting." (Tr. 194, 196.)

**B.     Plaintiff's Grounds For Reversal**

**1.     The ALJ Erred In His Credibility Analysis**

Plaintiff cites the following medical evidence in support of her subjective complaints: (1) her April 2005 MRI[3] showing degenerative changes in her cervical spine; (2) her July 2005 right-hand x-ray showing degenerative arthritis in her dominant hand; and (3) the fact that she wore a brace on her hands. (*Pltff's App. Brf.* at 6-7.) According to Plaintiff, this evidence corroborated her complaints of pain, and, if the ALJ had properly credited her testimony, he would have concluded that she could not perform the sitting required in sedentary work and the hand manipulation required

---

[3]Plaintiff characterizes this imaging as a MRI, although the report of the imaging appears to reflect that it was an x-ray. (Tr. 189.)

in her prior work as a data-entry clerk.

The objective medical evidence unquestionably established that Plaintiff had degenerative changes in her spine and degenerative arthritis in her hand.  However, despite these problems, there is nothing in the medical record suggesting that these conditions caused the level of pain described by Plaintiff or limited her to the degree she suggests. To the contrary, it appears that most of Plaintiff's physical examinations were normal, and her doctors prescribed a conservative course of treatment.

After reviewing the complete record, the Court concludes that the ALJ properly evaluated Plaintiff's credibility using the factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984).  His decision makes it clear that he took into account matters such as her daily activities, medications, and the medical record before deciding that Plaintiff's subjective complaints were not fully credible.  Therefore, the Court concludes that Plaintiff's first argument is without merit.

**2.      The ALJ Erred In His Step 4 Analysis**

According to Plaintiff, the ALJ did not properly analyze the demands of her past  relevant work, as required by Social Security Ruling 82-62.  This ruling requires that, if an ALJ concludes a claimant can return to her past relevant work, the ALJ's decision must include: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. S.S.R. 82-62.  "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work."  *Sells v. Shalala*, 48 F.3d 1044, 1046 (8th Cir. 1995).

At the administrative hearing, Plaintiff testified that her past work included a "data entry type" job. (Tr. 309.)  According to Plaintiff, she could no longer do this job because she "could not go up and down the steps anymore," and she had trouble typing.  (Tr. 309.)  In a follow-up question, the ALJ asked Plaintiff whether the "data entry" job was a "sit-down job where you –."  Plaintiff interrupted with the response: "Yes, it was."  (Tr. 314.)  The ALJ then asked Plaintiff why "you couldn't stay with it?"  Plaintiff answered:  "I couldn't sit very long."  (Tr. 314.)

In a Work History Report, Plaintiff described her position as a "data entry analyst" and reported that she "sat a computer and entered telephone records."  (Tr. 60.)  She indicated on a checklist that the job required 8 hours of sitting, and 8 hours of writing, typing, or handling small objects."  (Tr. 60.)  While the checklist had other spaces for indicating the hours spent doing other exertional and manipulative activities, these spaces were left blank.  (Tr. 60.)

The ALJ's decision contains the following Step 4 analysis of the demands of Plaintiff's past relevant work:

> The record shows that [Plaintiff] has worked in the relevant past as a data entry clerk. This job, as she described it in Exhibit 1-E, was performed at no more than the sedentary exertional level.
>
> In the judgment of the [ALJ], [Plaintiff's RFC] is consistent with the requirements of her past work.

(Tr. 18.)   Plaintiff argues that the "ALJ simply made the cursory conclusion that [Plaintiff's] past work as a data-entry clerk was performed at 'no more than' the sedentary exertional level," and that "[t]here was no discussion of the functional requirements of [Plaintiff's] past work and no analysis on a function-by-function basis of how her documented severe impairments would affect her ability to maintain employment."  (*Pltff's App. Brf.* at 10.)

This is not a case where the ALJ's decision contains no findings concerning the demands of Plaintiff's past relevant work.[4]  In concluding that the data entry job was performed at "no more than the sedentary level," the ALJ expressly referenced Plaintiff's description of the job on her Work History Report.[5]  Furthermore, during the administrative hearing, Plaintiff herself provided corroborating testimony concerning how the job was performed.  *See Johnston v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994) (holding that the ALJ permissibly relied on a vocational report where the claimant described the requirements of her past jobs, which were consistent with her RFC). Under these circumstances, the Court concludes that the ALJ adequately discharged his obligation to ascertain the demands of Plaintiff's past relevant work.

### 3.      The ALJ Erred In His Listing Analysis

Plaintiff contends that the ALJ erred in his Step 3 Listing analysis.  Plaintiff does *not* articulate what Listing she believes she met, but contends that the ALJ's "boilerplate" finding that she did not meet a Listing was insufficient, and warrants reversal in and of itself.[6]

In support of her argument, Plaintiff cites to decisions from other circuits that require an ALJ to articulate specific reasons why a claimant's Step 2 "severe" impairments do not meet a Listing at Step 3.  However, the Commissioner correctly points out that, while the Eighth Circuit has acknowledged these decisions by other circuits, it has refused to follow them.  *See Senne v. Apfel*,

---

[4]Plaintiff does not contend that her past relevant work performing data entry was actually performed at an exertional level greater than sedentary work.

[5]Plaintiff's Work History Report was a part of "Exhibit 1-E," which the ALJ referred to in his Step 4 analysis.

[6]The ALJ found that "[t]he evidence in this case does not document the existence of any impairment or combination of impairments that meets or equals the level of severity for any impairment [in the Listings]."  (Tr. 14.)

198 F.3d 1065, 1067 (8th Cir. 1999) (acknowledging   10th Circuit rule that an ALJ must make specific findings in Step 3 analysis but noting that "this is not the rule in the Eighth Circuit" – holding that the ALJ's conclusory Listing analysis was at most a deficiency in opinion writing that did not justify remand); *see also Pepper v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (noting that it is "preferable" for the ALJ to address a specific Listing but that the "failure to do so is not reversible error if the record supports the overall conclusion").

As indicated earlier, Plaintiff does not articulate what Listing she believes she met.  This glaring omission by Plaintiff, coupled with the Court's own review of the record, leads it to conclude that substantial evidence supports the ALJ's Step 3 analysis, despite his failure to follow the preferred practice of making specific  findings.

**4.      The ALJ Erred By Failing To Explain The Basis For Plaintiff's RFC**

Finally, Plaintiff contends that, in his decision, the ALJ did not adequately explain the basis for his RFC assessment.[7]  Suffice it to say, the Court disagrees with Plaintiff's reading of the ALJ's

---

[7]In her Appeal Brief, Plaintiff states this argument as follows:

> Here, the ALJ failed to build that "logical bridge" from the medical evidence to its ultimate [RFC] findings.  Indeed, even the most thorough reading of the ALJ's decision would not shed any light on how the ALJ arrived at its conclusion that [Plaintiff], despite her diagnosed osteoarthritis in her dominant hand, could perform the type of fingering that would be required in her prior work as a  data-entry clerk.  Likewise, the hearing decision is devoid of any explanation of the ALJ's finding that [Plaintiff] experienced no limitations in her ability to sit, in spite of the medical evidence establishing moderate degenerative changes to her cervical spine and her testimony that she could sit for no more than 45 minutes consecutively.  The ALJ's cursory recitation of the medical evidence alone is insufficient because the decision does not explicitly delineate how that evidence supports its [RFC] finding.

(*Pltff's App. Brf.* at 12-13.)

decision.

The ALJ developed the medical evidence and the reasons for discounting Plaintiff's credibility.  While diagnostic imaging revealed that Plaintiff had degenerative changes in her spine and osteoarthritis in her hands, those conditions did not require surgery, and she pursued only a conservative course of treatment.  Plaintiff points to no evidence where any treating or examining physician ever placed any restrictions or limitations on her, other than the "mild squatting limitation" of the consultative examiner.[8]  This medical evidence is consistent with the level of functioning encompassed in the ALJ's RFC determination, which accounted for Plaintiff being able to perform light work and return to past relevant work in a sedentary job.  Thus, the Court concludes that substantial evidence supports the ALJ's RFC determination, and that the ALJ's decision contains a sufficient explanation of how he arrived at that determination.

### III.  Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996),

---

[8]The Court notes that the administrative record contains a checklist RFC assessment from a state agency physician who reviewed Plaintiff's medical records and concluded that Plaintiff had an RFC for sedentary work with an additional manipulative limitation prohibiting Plaintiff from overhead reaching.  (Tr. 227-34.)  Such assessments from nontreating, nonexamining sources are generally entitled to little weight.  *See Willcokson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008).  In this case, the ALJ implied that he discounted its weight: "The [ALJ] has considered the opinion of te state agency medical consultant pursuant to [S.S.R. 96-9p].  However, the record has been supplemented with testimony and additional medical evidence."  (Tr. 18.)

*superseded by statute on other grounds*; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).  The

Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of

the hearing.   The Court concludes that the record as a whole contains ample evidence that "a

reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

*Richardson v. Perales*, 402 U.S. at 401; *see also,  Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.

2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and

Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 13th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE